IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

CENTRAL STATES, SOUTHEAST AND )
SOUTHWEST AREAS PENSION FUND; )
and ARTHUR H. BUNTE, Jr., trustee, )
) Case No.
    Plaintiffs, )
) Honorable
v. ) District Judge
)
NORFOLK SOUTHERN RAILWAY )
COMPANY, a Virginia corporation, )
)
    Defendant. )

## COMPLAINT

Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund and Arthur H. Bunte, Jr., one of its present trustees, for a cause of action against Defendant allege as follows:

## JURISDICTION AND VENUE

1. This is an action for the collection of withdrawal liability, interest, and penalties incurred by an employer as a result of a withdrawal from a multiemployer pension plan.

2. This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C.§1001 *et seq*. This Court has jurisdiction over this action under sections 502(e), 502(f), and 4301(c) of ERISA, 29 U.S.C. §§ 1132(e), 1132(f) and 1451(c), as well as under 28 U.S.C. §§1331.

3. Venue lies in this district under sections 502(e)(2) and 4301(d) of ERISA, 29 U.S.C. §§1132(e)(2) and 1451(d), in that Norfolk Southern Railway Company ("Norfolk Southern") does business in Cheektowaga, New York. Venue also lies in this district under 28

U.S.C. §1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

4. Plaintiffs Central States, Southeast and Southwest Areas Pension Fund (the APension Fund@) is a multiemployer pension plan within the meaning of sections 3(37) and 4001(a)(3) of ERISA, 29 U.S.C. §§ 1002(37) and 1301(a)(3).

5. Plaintiff Arthur H. Bunte, Jr., is a present trustee and fiduciary of the Pension Fund within the meaning of section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A), and he and his fellow trustees are the plan sponsor of the Pension Fund within the meaning of §4001(a)(10) of ERISA, 29 U.S.C. §1301(a)(10). The Trustees administer the Pension Fund at 9377 West Higgins Road, Rosemont, Illinois.

6. Pursuant to sections 502(a)(3) and 4301(a)(1) of ERISA, 29 U.S.C. §§1132(a)(3) and 1451(a)(1), the Trustees, by and through their designated trustee Arthur H. Bunte, Jr., are authorized to bring this action on behalf of the Pension Fund, its participants and beneficiaries for the purpose of collecting withdrawal liability.

7. Defendant Norfolk Southern is a corporation organized under the laws of the Commonwealth of Virginia.

8. During all relevant periods of time, Norfolk Southern was engaged in the transportation of railway freight, and operated a rail yard facility located in Cheektowaga, New York (the "Facility").

9. Automobile Distribution of Buffalo, Inc. ("Automobile Distribution") is or was a corporation organized under the laws of the State of New York.

## BACKGROUND FACTS

A. **The relationship between Norfolk Southern and Automobile Distribution regarding the drivers working at the Facility.**

10. During all relevant times, Norfolk Southern and Automobile Distribution were parties to an agreement whereby Automobile Distribution agreed to provide Norfolk Southern with drivers for its operations at the Facility (the "Norfolk Southern Agreement").

11. If Automobile Distribution wanted to hire any new drivers for the Facility, the applicant had to submit to a background investigation through Norfolk Southern's service.

12. Norfolk Southern controlled the training of new drivers working at the Facility.

13. The drivers' primary responsibilities were moving rail cars around the Facility, and loading and unloading automobiles from the rail cars.

14. Norfolk Southern controlled the work assignments of the drivers and supervised their daily activities.

15. The drivers could not refuse an assignment given to them by Norfolk Southern's managers and supervisors.

16. Norfolk Southern established the work rules and operating procedures for the drivers.

17. Norfolk Southern determined the work schedule of the drivers, the number of drivers that worked each day, the numbers of hours each driver worked in a day, and when the drivers could leave work at the end of the day.

18. Norfolk Southern conducted investigations regarding disciplinarily matters related to the drivers.

19. Norfolk Southern determined when there were layoffs and recalls of the drivers working at the Facility.

- 3 -

20. Norfolk Southern had the right to fire the drivers and could bar drivers from working at the Facility.

21. Norfolk Southern owned the equipment used by the drivers, including the computer system and related computer software and the equipment used to load and unload the automobiles.

22. Automobile Distribution had office space at the Facility which was provided by Norfolk Southern at no cost.

23. Norfolk Southern had full and complete access to Automobile Distribution's books and records to perform audits.

24. Upon information and belief, Automobile Distribution's only client was Norfolk Southern.

25. On or about October 30, 2010, Norfolk Southern terminated the Norfolk Southern Agreement.

26. As a result of the termination of the Norfolk Southern Agreement, the drivers working at the Facility were laid-off.

27. In a proceeding before the National Mediation Board (NMB), Automobile Distribution asserted that virtually all aspects of the drivers' work were controlled by Norfolk Southern. *See in re Automobile Distribution of Buffalo, Inc. and Complete Auto Network*, 37 NMB 372, 2010 WL 3454200, *1 (September 3, 2010).

28. The NMB determined that Norfolk Southern exercised "substantial control" over the drivers at the Facility. *In re Automobile Distribution of Buffalo*, 37 NMB 372, 2010 WL 3454200, *7.

**B.  Automobile Distribution's participation in and withdrawal from the Pension Fund.**

29.  During all relevant times, Automobile Distribution was bound by collective bargaining agreements executed between itself and a certain local union affiliated with the International Brotherhood of Teamsters (the "Collective Bargaining Agreements").

30.  Pursuant to the Collective Bargaining Agreements, Automobile Distribution was required to make contributions to the Pension Fund on behalf of the drivers at the Facility.

31.  The Pension Fund determined that on or about October 30, 2010, Automobile Distribution permanently ceased to have an obligation to contribute to the Pension Fund and/or permanently ceased all covered operations, thereby effecting a "complete withdrawal" from the Pension Fund within the meaning of section 4203 of ERISA, 29 U.S.C. §1383.

32.  As a result of this complete withdrawal, Automobile Distribution incurred withdrawal liability to the Pension Fund, in the principal amount of $1,351,065.54, as determined under section 4201(b) of ERISA, 29 U.S.C. §1381(b).

33.  On or about July 21, 2011, Automobile Distribution received a notice and demand for payment of the withdrawal liability issued by the Pension Fund in accordance with 29 U.S.C. §§1382(2) and 1399(b)(1). The notice demanded full payment of the entire amount of the withdrawal liability by August 1, 2011, pursuant to section 4219(c)(5)(B) of ERISA, 29 U.S.C. §1399(c)(5)(B), and Appendix E, §5(e)(2) of the Pension Fund's Pension Plan. The amount demanded was $1,351,065.54, the balance owed at that time on the withdrawal liability.

34.  Automobile Distribution did not timely initiate arbitration pursuant to section 4221(a)(1) of ERISA, 29 U.S.C. §1401(a)(1).

35.  Automobile Distribution failed to make the required withdrawal liability payment to the Pension Fund.

36. On October 26, 2011, the Pension Fund filed suit against Automobile Distribution in the United States District Court for the Northern District of Illinois in a case entitled *Central States, Southeast and Southwest Areas Pension Fund, et al. v. Automobile Distribution of Buffalo, Inc.,* Case No. 11 C 7628, to collect the withdrawal liability, plus interest, statutory damages, attorneys' fees, and costs (the "Automobile Distribution Lawsuit").

37. On December 14, 2011, a Consent Judgment was entered in the Automobile Distribution Lawsuit in favor of the Pension Fund and against Automobile Distribution in the amount of $1,648,465.98 (the "Automobile Distribution Judgment").

38. To date, the full amount of the Automobile Distribution Judgment remains due and owing to the Pension Fund.

39. On August 29, 2013, the Pension Fund filed suit against Complete Personnel Solutions, LLC ("Complete Personnel") and Complete Auto Network Canada, Ltd. ("Complete Auto"), which was litigated in the United States District Court for the Western District of New York in a case entitled *Central States, Southeast and Southwest Areas Pension Fund, et al. v. Complete Personnel Solutions, LLC,* Case No. 13-cv-1091, to collect the withdrawal liability, plus interest, statutory damages, attorneys' fees, and costs (the "Complete Personnel Lawsuit")

40. The Complete Personnel Lawsuit alleged that Automobile Distribution, Complete Personnel, and Complete Auto were a group of trades or businesses under common control (the "Automobile Distribution Controlled Group"), and therefore constituted a single employer within the meaning of section 4001(b)(1) of ERISA, 29 U.S.C. §1301(b)(1), and the regulations promulgated thereunder.

41. On March 31, 2015, a Judgment was entered in the Complete Personnel Lawsuit in favor of the Pension Fund and against Complete Personnel, and Complete Auto in the amount of $1,904,516.27 (the "Complete Personnel Judgment").

42. To date, the full amount of the Complete Personnel Judgment remains due and owing to the Pension Fund.

## CLAIM FOR RELIEF

43. Plaintiffs reallege and incorporate by reference paragraphs 1-42 as and for paragraph 43 of this Complaint.

44. Norfolk Southern was in control of the drivers working at the Facility.

45. Norfolk Southern was responsible for all of the labor relations relating to the drivers at the Facility.

46. Norfolk Southern retained control over all of the terms and conditions of employment relating to the drivers at the Facility.

47. Norfolk Southern was in control of the day-to-day operations of the drivers working at the Facility.

48. Norfolk Southern owned, operated, and/or maintained the equipment used by the drivers at the Facility.

49. Norfolk Southern and Automobile Distribution were joint employers of the drivers at the Facility.

50. As a joint employer with Automobile Distribution, Norfolk Southern is jointly and severally liable with Automobile Distribution for the withdrawal liability owed to the Pension Fund in the principal amount of $1,351,065.54.

**WHEREFORE**, Plaintiffs request the following relief:

(a) A judgment against Defendant, Norfolk Southern, and on behalf of Plaintiffs, pursuant to sections 502(g)(2) and 4301(b) of ERISA, 29 U.S.C. §§ 1132(g)(2) and 1451(b), for --

    (i) $1,351,065.54 in withdrawal liability;

    (ii) interest computed and charged at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which interest is charged;

    (iii) an amount equal to the greater of interest on the past due withdrawal liability or liquidated damages of 20% of the past due withdrawal liability; and

    (iv) attorneys' fees and costs.

(b) Post-judgment interest computed and charged on the entire judgment at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which interest is charged, compounded annually; and

(c) For such further or different relief as this Court may deem proper and just.

Dated: September 6, 2016
       Buffalo NY 14203

                                          Respectfully submitted,

                                          CREIGHTON, JOHNSEN & GIROUX
                                          Attorneys for Plaintiffs
                                          Central States Funds

                                          /s/ E. Joseph Giroux, Jr., Esq.
                                          560 Ellicott Square Building

295 Main St – Suite 560  
Buffalo NY 14203  
716-854-0007  
jgiroux@cpjglaborlaw.com

*/s/Anthony E. Napoli*  
Anthony E. Napoli  
Attorney for Plaintiffs  
Central States Funds  
9377 W. Higgins Road, 10th Floor  
Rosemont, Illinois 60018-4938  
(847) 939-2469  
ARDC # 06210910  
tnapoli@centralstates.org