UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CENTRAL STATES, SOUTHEAST AND                    **REPORT AND**
SOUTHWESTAREAS PENSION FUND and                  **RECOMMENDATION**
ARTHUR H. BUNTE, JR., Trustee,

                                    Plaintiffs,           1:16-CV-00708-LJV-JJM

v.

NORFOLK SOUTHERN RAILWAY COMPANY,
a Virginia Corporation,
                                    Defendant.
_____

   Before the court is defendant Norfolk Southern Railway Company's motion to

dismiss the Complaint pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6) for failure to state a claim

for relief [10],[1] which has been referred to me for initial consideration [17]. Following oral

argument on February 9, 2017 [23], I requested additional briefing [24], to which the parties

have responded. Having carefully considered the parties' submissions [10, 21, 22, 27, 28], I

conclude that plaintiffs have alleged a plausible claim for relief. Therefore, I recommend that

Norfolk Southern's motion be denied.


## BACKGROUND

   Plaintiffs, a multiemployer pension plan and its trustee (collectively referred

to   as "the Fund") "filed this action under the Employee Retirement Income Security Act

of 1974 ('ERISA'), as amended by the Multiemployer Pension Plan Amendments Act of

1980 ('MPPAA'), 29 U.S.C. §1001, *et seq*., to collect withdrawal liability from Norfolk

Southern . . . . The Fund alleges that Norfolk [Southern] is a joint employer with another

---

[1]  Bracketed references are to the CM/ECF docket entries.

company, Automobile Distribution of Buffalo, Inc. ('ADBI'), which had a contractual obligation to contribute to the Fund. As a joint employer, Norfolk [Southern] is liable for the withdrawal liability that was incurred by ADBI when it triggered a complete withdrawal from the Fund." The Fund's Response [21], p. 1; Complaint [1], ¶¶49-50.

In moving to dismiss, Norfolk Southern argues that "[e]ven accepting as true Plaintiffs' factual allegations [that it was a joint employer with ADBI] for purposes of this motion, their withdrawal liability claim against Norfolk Southern fails as a matter of law" because "it is unlikely the Second Circuit would recognize the doctrine". Norfolk Southern's Memorandum of Law [10-3], pp. 5-6, 28 of 29.

## ANALYSIS

### A.     The Standard for Dismissal

In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face . . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.  Therefore, the complaint "does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level". Keiler v. Harlequin Enterprises Ltd., 751 F.3d 64, 70 (2d Cir. 2014).

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and

common sense." Iqbal, 556 U.S. at 679. "And, of course, a well-pleaded complaint may proceed

even if it strikes a savvy judge . . . that a recovery is very remote and unlikely." Bell Atlantic

Corp. v. Twombly, 550 U.S. 544, 556 (2007).


**B.      The Basis for MPPAA Withdrawal Liability**

"Withdrawal liability is part of a comprehensive legislative scheme designed to

address the adverse consequences that arise when individual employers terminate their

participation in, or withdraw from, multiemployer pension plans. Congress determined that

unregulated withdrawals from multiemployer pension plans could endanger their financial

vitality and deprive workers of vested pension rights . . . . Accordingly, Congress imposed a

withdrawal liability scheme, pursuant to which employers withdrawing from a multiemployer

pension plan are required to pay their proportionate share of the plan's unfunded vested

benefits." Burke v. Hamilton Equipment Installers, Inc., 2006 WL 3831380, *4 (W.D.N.Y.

2006), aff'd, 528 F.3d 108 (2d Cir. 2008).

The statutory basis for withdrawal liability is set forth at 29 U.S.C. §1381(a),

which states that "[i]f an employer withdraws from a multiemployer plan in a complete

withdrawal or a partial withdrawal, then the employer is liable to the plan in the amount

determined under this part to be the withdrawal liability".[2]

---

[2]      The only issue before this court is whether Norfolk Southern is an "employer" within the
meaning of §1381(a). If it is, then the question of whether it withdrew from the pension plan so as to
trigger withdrawal liability must be determined through arbitration pursuant to 29 U.S.C. §1401(a)(1).
*See* Norfolk Southern's Memorandum of Law [10-3], p. 5 of 29, n. 1.

While recognizing that "[t]he MPPAA itself contains no definition of the word employer", the Second Circuit has held that "the term employer in 29 U.S.C. §1381(a) means a person who is obligated to contribute to a plan either as a direct employer or in the interest of an employer of the plan's participants". Korea Shipping Corp. v. N.Y. Shipping Association-International Longshoremen's Association Pension Trust Fund, 880 F.2d 1531, 1536, 1537 (2d Cir. 1989).

**C.    Does Norfolk Southern Plausibly Satisfy Korea Shipping's Definition of an "Employer"?**

Although Korea Shipping defined "employer" as one who is "obligated to contribute" to a pension plan, it did not specify all potential sources of that obligation. Norfolk Southern argues that "the obligation to contribute is created by contract" (Norfolk Southern's Memorandum of Law [10-3], p. 16 of 29, *citing* Burke), "and therefore the party who is signatory to a contract creating the obligation to contribute is the employer for purposes of establishing withdrawal liability". Id., *quoting* Transpersonnel, Inc. v. Roadway Express, Inc., 422 F.3d 456, 460 (7th Cir. 2005).

However, neither Korea Shipping nor Burke directly addressed the question of whether a joint employer could be considered an "employer" under 29 U.S.C. §1381(a), and neither case held that *only* a signatory to the contract creating an obligation to contribute could fit that definition.[3] In fact, the Supreme Court has repeatedly made clear that the obligation to contribute for purposes of withdrawal liability may arise "from *either* a collective-bargaining agreement *or* more general labor-law prescriptions. See 29 U.S.C. § 1392(a)".  Bay Area

---

[3]    Burke stated that "[t]he obligation arises from the contractual relationship between the employer and the union". 2006 WL 3831380, *10. However, as discussed later in this Report and Recommendation, a joint employer can be bound to those contractual obligations.

Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of California, 522 U.S. 192, 196, n. 1 (1997) (emphasis added); Laborers Health and Welfare Trust Fund for Northern California v. Advanced Lightweight Concrete Co., 484 U.S. 539, 545-46 (1988) (the phrase "'obligation to contribute' . . . is defined for the purposes of the withdrawal liability portion of the statute in language that unambiguously includes both the employer's contractual obligations and any obligation imposed by the NLRA. That definition is significant because it demonstrates that Congress was aware of the two different sources of an employer's duty to contribute to covered plans").

Among the authorities cited by Norfolk Southern is  Olivieri v. P.M.B. Construction, Inc., 383 F. Supp. 2d 393, 405 (E.D.N.Y. 2005), holding that "there is no authority warranting the imposition of liability on a joint employer which did not sign the relevant collective bargaining agreement where there are no allegations of fraud or piercing the corporate veil". Norfolk Southern's Memorandum of Law [10-3], p. 22 of 29. However, at issue in Oliveri was 29 U.S.C. §1145 ("Delinquent contributions"), whereas withdrawal liability under §1381(a) is "a completely separate issue under ERISA with unique statutory provisions and definitions". Carpenters Combined Funds Inc. v. Kelly Systems, Inc., 2015 WL 6083598, *7, n. 8 (M.D. Pa. 2015).

In Division 1181 Amalgamated Transit Union - New York Employees Pension Fund v. New York City Department of Education, 2014 WL 4370724 (S.D.N.Y. 2014) the court, while recognizing that "[i]t is an open question in this Circuit whether the joint employer doctrine is applicable to cases under . . . the MPPAA" (id., *8), concluded that the doctrine is applicable. "This Court reads the Second Circuit's Korea Shipping Corp. decision as encompassing the statutory definition [of "obligation to contribute"]. The statute, as stated,

provides for two sources of an obligation, contractual and legal. Under the MPPAA, the NLRA

[National Labor Relations Act, 29 U.S.C. §151 *et seq.*] is an 'applicable labor-management

relations law' . . . . Interpreting the NLRA, the NLRB has used the joint employer doctrine to

determine whether non-signatories may be bound to the terms of a CBA." Id.[4] "Consequently,

the Court concludes that the joint employer doctrine, as applied by the NLRB, is applicable to

claims under the MPPAA in this Circuit . . . . Therefore, at the pleading stage, the [Complaint]

plausibly alleges that the DOE [Department of Education] is a joint employer with the DOE

Contractors and therefore jointly liable for their withdrawal liability under the MPPAA." Id.,

**8, 9.[5]

       There is other authority to the same effect. *See* Central States, Southeast and

Southwest Areas Pension Fund v. International Comfort Products, LLC, 787 F. Supp. 2d 696,

702 (M.D. Tenn. 2011) ("§301 of the LMRA [29 U.S.C. §185] binds a joint employer to the

terms of a collective bargaining agreement signed by a co-joint employer . . . . Consequently, if

ICP and Top were joint employers, they were jointly liable, under §301 and the Top CBA, to

---

[4]     Binding a joint employer to the terms of a collective bargaining agreement which it did not sign is not a new concept. *See*, *e.g.*, Cruz v. Robert Abbey, Inc., 778 F. Supp. 605, 610 (E.D.N.Y. 1991) ("[a] joint employer . . . can be bound by a collective bargaining agreement entered into by its co-employer"); Chelsea Grand, LLC v. New York Hotel & Motel Trades Council, AFL-CIO, 2014 WL 4813028, *2 (S.D.N.Y. 2014), aff'd, 629 Fed. App'x 152 (2d Cir. 2015) ("Interstate was bound by the . . . 2001 Industry Wide Agreement. Since Interstate was already bound, it could bind Chelsea Grand to the same agreement . . . as a joint employer"); Mason Tenders District Council of Greater New York and Long Island v. CAC of New York, Inc., 46 F. Supp. 3d 432, 437 (S.D.N.Y. 2014) ("[i]f Atlas is found to be a joint employer with CAC, a signatory to the CBA, then Atlas can be compelled to arbitrate under its terms").

[5]     The court subsequently vacated that portion of its decision, upon realizing that "[a]pplicable labor-management relations law imposes no duty on a government entity as an employer. Therefore, the joint employer doctrine . . . does not apply to the DOE for purposes of withdrawal liability under ERISA and the MPPAA." 2014 WL 6647368, *3 (S.D.N.Y. 2014). However, that realization in no ways detracts from the validity of the court's joint employer analysis.

make contributions to the Fund . . . . Thus, if ICP and Top were joint employers for the purposes of §301, ICP was an 'employer' under the MPPAA, and it incurred withdrawal liability").

Among the authorities cited by Norfolk Southern is <u>Rheem Manufacturing Co. v. Central States, Southeast and Southwest Areas Pension Fund</u>, 873 F. Supp. 173, 179 (W.D. Ark. 1994), <u>aff'd</u>, 63 F.3d 703 (8th Cir. 1995). However, the district court opinion in <u>Rheem</u>, affirmed by the Eighth Circuit, is based upon a definition of "employer" which is slightly but significantly different from that in <u>Korea Shipping</u>: "even if Rheem has a non-contractual obligation to contribute as a joint employer, it still would not be an 'employer' under MPPAA because: (1) it would not obligated as a 'direct employer' of the leased employees, because Knight was the direct employer; and (2) it would not be obligated 'in the interest of *the* employer,' but rather in its own interest as joint employer." 873 F. Supp. 173, 179 (emphasis added). Use of the word "the" suggests that there can only be one employer. *See* <u>Renz v. Grey Advertising, Inc.</u>, 135 F.3d 217, 222 (2d Cir. 1997) ("[p]lacing the article 'the' in front of a word connotes the singularity of the word modified").

However, <u>Korea Shipping</u> uses the phrase "obligated to contribute to a plan *either* as a direct employer *or* in the interest of *an* employer of the plan's participants" (880 F.2d at 1537, emphasis added), suggesting that "direct employer" and "an employer" are not necessarily synonymous.[6] The court emphasized that "in construing a statute, the task of the courts is to interpret the words of the statute in light of the purposes that animated the lawmakers in enacting it". <u>Id.</u> "Thus, in deciding how to define employer, the district court properly considered Congress' remedial and protective purposes in enacting the MPPAA." <u>Id.</u> The

---

[6]     *See* <u>United States v. Hagler</u>, 700 F.3d 1091, 1097 (7th Cir. 2012) ("the indefinite article 'an' generally implies the possibility of a larger number than just one").

district court noted that "Congress' primary objective in enacting the MPPAA was to protect the multiemployer plan participants from financial instability in relation to funding of the Plan . . . . This objective supports a *broad reading* of the term 'employer,' as used in reference to withdrawal liability, in order to insure the financial stability of the multiemployer plans". Korea Shipping 663 F. Supp. 766, 769 (S.D.N.Y. 1987) (emphasis added).

      Norfolk Southern further argues that "sound public policy reasons . . . support this Court's rejection of the Pension Fund's argument", since "it would impose wholly unforeseen withdrawal liability on companies who never agreed to contribute to multiemployer plans and never anticipated that they might incur MPPAA liability". Norfolk Southern's Reply Memorandum of Law [22], pp. 9-10 of 12. However, if Norfolk Southern has exercised the level of control required to render it a joint employer (as alleged by the Fund[7] and conceded by Norfolk Southern solely for purposes of this motion), then the possibility that it might be bound by the obligations of the collective bargaining agreement executed by ADBI could not have been "wholly unforeseen". As the Fund points out, "the Second Circuit never suggested that a contractual obligation was the only obligation sufficient to trigger employer status. Indeed, if that were so, the court's primary concern of preventing employers from insulating themselves contractually from withdrawal liability would have been frustrated." The Fund's Response [21], p. 11.[8]

---

[7]     *See* Complaint [1], ¶¶43-48. "[A]n essential element of any joint employer determination is sufficient evidence of immediate control over the employees . . . namely, whether the alleged joint employer (1) did the hiring and firing; (2) directly administered any disciplinary procedures; (3) maintained records of hours, handled the payroll, or provided insurance; (4) directly supervised the employees; or (5) participated in the collective bargaining process." Service Employees International Union, Local 32BJ v. N.L.R.B., 647 F.3d 435, 442–43 (2d Cir. 2011).

[8]     Norfolk Southern points to an August 29, 1994 agreement with ADBI which designates ADBI as the employer responsible for making the contributions at issue. Norfolk Southern's Memorandum of Law [10-3], pp. 7-8 of 29. However, neither the employees nor the Fund were parties to that agreement.

I do not dismiss out of hand the contrary authorities discussed by Norfolk Southern. However, since this is a Rule 12(b)(6) motion, I must "draw[ ] all reasonable inferences in the plaintiff's favor". Brown Media Corp. v. K&L Gates, LLP, ___F.3d__, 2017 WL 1360770, *4 (2d Cir. 2017). Therefore, if it is reasonable to infer that the joint employer theory can support withdrawal liability in this Circuit - and I believe that it is - then in deciding this motion I must draw that inference in favor of the Fund, even if a contrary inference might also be reasonable. See Potter Voice Technologies LLC v. Apple, Inc., 2013 WL 1325040, *3 (D. Colo. 2013) ("[o]ther inferences are possible but, at the moment, all reasonable inferences must be drawn in favor of the plaintiff").

## CONCLUSION

For these reasons, I recommend that defendant's motion to dismiss [10] be denied. Unless otherwise ordered by Judge Vilardo, any objections to this Report and Recommendation must be filed with the clerk of this court by May 9, 2017. Any requests for extension of this deadline must be made to Judge Vilardo.  A party who "fails to object timely . . . waives any right to further judicial review of [this] decision".  Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider de novo arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance.  Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the

proposed findings and recommendations to which objection is made and the basis for each

objection . . . supported by legal authority", and must include "a written statement either

certifying that the objections do not raise new legal/factual arguments, or identifying the new

arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply

with these provisions may result in the district judge's refusal to consider the objections.

Dated: April 25, 2017


                                                      /s/ Jeremiah J. McCarthy
                                                      JEREMIAH J. MCCARTHY
                                                      United States Magistrate Judge